# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CASE NO. 08-cr-00523-PAB

UNITED STATES OF AMERICA,

   Plaintiff,

v.

1. NATHAN DANIEL LARSON,

   Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Kurt J. Bohn, Assistant United States Attorney for the District of Colorado, and the Defendant, Nathan Daniel Larson, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

## I. PLEA AGREEMENT

The Defendant agrees to plead guilty to the one count Indictment, charging a violation of 18 U.S.C. § 871(a), threatening to take the life of, and to inflict bodily harm upon the President of the United States.

The government agrees that a two-point reduction in the offense level for acceptance of responsibility is appropriate pursuant to the advisory United States Sentencing Commission, Guidelines Manual, § 3E1.1(a)(Nov. 2008). The government



COURT EXHIBIT 1

agrees, pursuant to Fed.R.Crim.P., Rule 11(c)(1)(B), to recommend to the Court that the defendant be sentenced to the bottom of the applicable guideline range, as estimated below.

## II. ELEMENTS OF THE OFFENSE

### Count One: 18 U.S.C. § 871(a)

First: the defendant emailed, wrote, or uttered the words alleged to be the threat against the President as charged in the indictment;

Second: the defendant understood and meant the words emailed, written, or uttered as a threat; and

Third: the defendant emailed, wrote, or uttered the words knowingly and willfully.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 871(a) is: not more than five (5) years imprisonment; not more than a $250,000.00 fine, or both; not more than three years of supervised release; and a $100.00 special assessment fee.

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which

establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant, pursuant to § 1B1.3, for computing the advisory sentencing guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§ 6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§ 1B1.3) or to sentencing in general (§ 1B1.4). In "determining the factual basis for the sentence, the court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§ 6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§ 1B1.3) began is on or about December 11, 2008. They also agree that all conduct relevant to the offense occurred within the State and District of Colorado.

On December 11, 2008, the defendant sent an email to the Secret Service, stating that, "I am writing to inform you that in the near future, I will kill the President of the United States of America." The defendant's email then lays out the reasons why he intended to kill the President of the United States, and how he intended to carry out the assassination.

The email was sent by the defendant from the home he was residing at in Boulder, Colorado, to the Secret Service addressed at comments@whitehouse.gov. In response to the defendant's threatening email, two Secret Service Agents interviewed the defendant on December 15, 2008. During the course of the interview the defendant admitted to writing the email, sending the email, and more significantly, standing by what he said. The Agents repeatedly asked the defendant if he was joking, letting off steam, or just trying to draw attention to his political views. The defendant's responses indicated that he was serious about carrying out his threat. The defendant had taken no action to carry out or effectuate the actions threatened by the email.

## V. SENTENCING COMPUTATION

The parties understand that the sentencing guidelines are advisory and that the sentence in this case will be determined based on a number of factors, including those outlined in 18 U.S.C. § 3553(a).

The parties also understand that the court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the court is not bound by any position of the parties. (§ 6B1.4(d)) The court is free, pursuant to §§ 6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§ 6B1.4 Comm.; § 1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§ 6B1.4(b))

4

The 2008 Edition of the Sentencing Guidelines is applicable in this case.

A.   The offense guideline is § 2A6.1(a)(1), with a base offense level of 12.

B.   There is a 4 level decrease in the offense level for Specific Offense Characteristics because the offense involved a single instance evidencing little or no deliberation. § 2A6.1(b)(5).

C.   There is a 6 level increase in the offense level for a Victim Related Adjustment because the status of the victim. § 3A1.2(b).

D.   The adjusted offense level would therefore be 14.

E.   The Defendant should receive the maximum downward adjustment for acceptance of responsibility under Guideline § 3E1.1, making the total offense level 12.

F.   The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the court. Known facts regarding the criminal history are as follows:

(1) Use of a Computer for Harassment in Fairfax County, VA, case number VA029013J. He was sentenced to 6 months, 20 days confinement (6 months suspended). [1 point]

Known facts regarding the defendant's criminal history suggest he may have 1 criminal history points, putting him in Criminal History Category I.

G.   Assuming the (tentative) criminal history facts of F. above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

H.   The guideline range resulting from the estimated offense level of 12, and

5

the (tentative) criminal history category I, is 10 to 16 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of 12 could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum.

I.  Pursuant to advisory guideline § 5E1.2, assuming the offense level is 12, the fine range would be $3,000.00 to $30,000.00, plus applicable interest and penalties.

J.  Pursuant to guideline § 5D1.2, if the Court imposes the term of supervised release, that term cannot be more than three years.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing ranges resulting from the proposed plea agreement are appropriate because all relevant conduct is disclosed, the sentencing guidelines and 18 U.S.C. § 3553 take into account all pertinent sentencing factors with respect to this defendant, and the charge to which the defendant has agreed to plead guilty, and the sentencing range agreed upon by the parties, adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 14-05-09              *(signature)*
                            NATHAN DANIEL LARSON
                            Defendant

Date: 14 May 09             *(signature)*
                            KURT J. BOHN
                            Assistant U.S. Attorney

Date: _____        _____
                            Matthew Golla
                            Assistant Federal Public Defender