IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.  08-CR-00523-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NATHAN DANIEL LARSON,

    Defendant.

_____

REPORTER'S TRANSCRIPT
Sentencing (Volume 1)

_____

    Proceedings before the HONORABLE PHILIP A. BRIMMER, Judge, United States District Court for the District of Colorado, commencing at 1:40 p.m. on the 2nd day of October, 2009, in Courtroom A701, United States Courthouse, Denver, Colorado.

APPEARANCES

    Kurt J. Bohn, Assistant United States Attorney, 1225 17th Street, Suite 700, Denver, CO 80202, appeared for the plaintiff.

    The defendant appeared pro se.

    Matthew C. Golla, Office of the Federal Public Defender, 633 17th Street, Suite 1000, Denver, CO 80202, appeared as advisory counsel to the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Janet M. Coppock, 901 19th Street, Room A257, Denver, Colorado, 80294, (303) 893-2835

1                     PROCEEDINGS

2          *THE COURT:*  United States of America v. Nathan Daniel

3     Larson.  It is Criminal Case No. 08-CR-523.  Mr. Bohn appears

4     on behalf of the United States.  Good afternoon.

5          *MR. BOHN:*  Good afternoon, Your Honor.

6          *THE COURT:*  Mr. Larson appears.  He represents in

7     himself in this matter.  Good afternoon, Mr. Larson.

8          *THE DEFENDANT:*  Good afternoon.

9          *THE COURT:*  And Mr. Golla is here as Mr. Larson's

10    advisory counsel, and good afternoon to you.

11         *MR. GOLLA:*  Good afternoon, Your Honor.

12         *THE COURT:*  We are here today for sentencing pursuant

13    to Mr. Larson's plea on May 14 of 2009 to threats against the

14    president of the United States in violation of 18 U.S.C.

15    871(a).  A variety of submissions have been made regarding

16    sentencing, and why don't we go over those at this time just to

17    make sure that a record is made about where we stand.

18         Mr. Larson, I received just today a pleading entitled

19    "Withdrawal of Motion that the Criminal History Category

20    Applicable in this case be Determined to be Criminal History

21    Category I."  Is that, in fact, a pleading that you filed

22    either today or yesterday?

23         *THE DEFENDANT:*  Yes.

24         *THE COURT:*  Okay.  And do I understand it correctly,

25    Mr. Larson, that based upon the documents that were submitted

1  by the probation department, that you are no longer seeking to

2  have your criminal history category determined under the

3  guidelines as Criminal History Category I based on the theory

4  that you, in fact, had not pled guilty to those events?

5           THE DEFENDANT:  That's correct.

6           THE COURT:  Mr. Bohn, did the government receive a

7  copy of that motion?

8           MR. BOHN:  I did not, but I was shown it and had an

9  opportunity to review it with probation prior to this hearing.

10          THE COURT:  Mr. Larson's request not to count the one

11 point that was added for his 2001 marijuana possession

12 conviction will be noted.

13          The Court is also in receipt of document -- a pleading

14 filed by Mr. Larson which is Docket No. 40, notice of

15 sentencing preferences.  Docket No. 36 is Mr. Larson's motion

16 that the criminal history category applicable in this case be

17 determined to be Criminal History Category I.

18          And that, I take it, Mr. Larson, is the motion that

19 you are withdrawing now; is that correct?

20          THE DEFENDANT:  That's correct.

21          THE COURT:  Okay.  That is Docket No. 36.  That will

22 be deemed to be withdrawn.

23          Mr. Larson, I am also now looking at a pleading that's

24 Docket No. 38 which is entitled, "Defendant's Motion for

25 Downward Departure from Advisory Guidelines or a Sentence

1    Variance Below the Advisory Guideline Range."  This is a

2    document or a pleading that was authored by Mr. Golla on your

3    behalf.

4         Is this a motion that you wish the Court to consider

5    in sentencing in this case?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Okay.  Also for the record, Mr. Larson, if

8    you wish, I will allow Mr. Golla to argue things on your behalf

9    as long as it's clear that that's something that you wish for

10   him to do.  So we will take that up as the situation arises.

11        THE DEFENDANT:  Okay.

12        THE COURT:  Mr. Larson, now let me ask you about

13   whether you have been in receipt -- did you receive the

14   Presentence Investigation Report in this case?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Did you also receive a copy of the

17   addendum to the Presentence Report?

18        THE DEFENDANT:  Yes.  I received the three addenda.

19        THE COURT:  Okay.  And did you also receive a copy of

20   the letters that are attached which you apparently wrote but

21   which are attached to the addendum?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Mr. Larson, do you have any additional

24   motions or any additional objections or any corrections to the

25   Presentence Investigation Report?

1           *THE DEFENDANT:*  No.

2           *THE COURT:*  Mr. Bohn, on behalf of the United States,

3   has the United States received the addenda to the Presentence

4   Investigation Report?

5           *MR. BOHN:*  We have received the Presentence

6   Investigation Report.  We have received the addendum and we

7   have received the second and third addendum to the Presentence

8   Report.  We have nothing in addition, Your Honor, other than

9   the response to which we have filed indicating we have no

10  objection in our response to the motion for a downward

11  departure or variant sentence filed by Mr. Golla.

12          *THE COURT:*  All right.  Let me see if I have that.

13          And Mr. Bohn, the government's response is Docket

14  No. 41; is that correct?

15          *MR. BOHN:*  That is correct, Your Honor.

16          *THE COURT:*  Thank you.

17          *MR. BOHN:*  We also submitted a response to the

18  Presentence Report which was probably attached to one of the

19  addendums indicating we had no objection to the original PSIR.

20          *THE COURT:*  Correct.

21          All right.  Based upon Mr. Larson's withdrawal of his

22  objection to including the one point for his 2001 marijuana

23  conviction, Mr. Larson, do you have -- if you take a look at

24  Page 5 of the Presentence Investigation Report, do you have any

25  objection to the probation department's calculation of your

1  offense score?

2       THE DEFENDANT:  Offense score?

3       THE COURT:  Yeah.  By that I mean you see at the top

4  of Page 5 there is an offense level computation, and let me

5  review it briefly the way the probation department has

6  determined it to be.  The base offense level is 12 based upon

7  what you pled guilty to.  It's reduced by four levels because

8  it involved a single instance evidencing little or no

9  deliberation.  However, six levels are added based upon the

10 victim in this case, that being the president of the United

11 States.  That then puts you at a level -- adjusted level of 14.

12 And then two levels would be deducted pursuant to the probation

13 department's calculation for acceptance of responsibility.

14 That would then put you at a total offense level of 12.

15      Do you have any disagreements with that calculation?

16      THE DEFENDANT:  No.

17      THE COURT:  Okay.  Now let's turn to Part B on Page 6

18 and that's the calculation of your criminal history category.

19 It sounds like you agree that you have two criminal history

20 points putting you in Criminal History Category II; is that

21 correct?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Okay.  Mr. Bohn, on behalf of the United

24 States, any disagreement with the probation department's

25 calculation?

1          *MR. BOHN:*  None, Your Honor.  Thank you, though.

2          *THE COURT:*  Mr. Larson, at this point in time, how

3     would you like to approach the issue -- well, what we are going

4     to do is this.  Because a motion for downward departure is

5     different than a motion for a variant sentence because the

6     motion for downward departure goes to how the Court calculates

7     the guidelines, so that's what we are going to take up first,

8     so we will argue the motion for downward departure separately

9     from your motion for a variant sentence.

10          So let's now focus in on the motion for downward

11    departure.  Would you like to argue that motion or would you

12    like for Mr. Golla to argue that motion?

13          *THE DEFENDANT:*  For Mr. Golla to argue it.

14          *THE COURT:*  Mr. Golla, on behalf of Mr. Larson?

15          *MR. GOLLA:*  Your Honor, I filed this motion really

16    based on the one issue being the one-point addition toward

17    Mr. Larson's criminal history for a possession of -- and I

18    believe it's 1.4 grams of marijuana in 2001.  I realize that

19    the guidelines call for a one-point addition to an individual's

20    criminal history if there is a period of probation, which I

21    believe Mr. Larson did receive in this case.  However, I would

22    ask the Court to consider the fact that this is a particular

23    offense.  In fact, he did get a one-year probation which he

24    successfully completed a year later in December of '02.

25          I would ask the Court to consider the one issue behind

1   this really is whether it overrepresents his criminal history.

2   The argument I have that supports that is that it's my

3   understanding that in the County of Denver, that offense would

4   be punishable by a citation.  It's the type of offense that

5   varies greatly as far as the punishment that's meted out for

6   that around the country.  That's really the basis for the

7   motion.  I also would point out it's a very, very small amount

8   of marijuana.

9        I am not minimizing the fact that marijuana is a drug

10  and it's -- you know, I can't get around that, but, you know,

11  marijuana these days is used for medicinal purposes and I think

12  it's on the cusp of approaching that area where it may be

13  legitimized in many areas of the country, I don't know, but at

14  this point I do know it's punishable by a citation in certain

15  areas of the United States.

16       Based on that I would ask the Court to consider that

17  in that form and fashion his criminal history is

18  over-represented.

19            THE COURT:  Thank you, Mr. Golla.

20            Mr. Bohn?

21            MR. BOHN:  I didn't spend a lot of time on this issue,

22  but I think it's important enough just to note we are talking

23  about one criminal history point which the people, the

24  individuals who put the sentencing guidelines together have

25  said a minor offense is only worth one criminal history point.

1   To the extent that the illegal possession of marijuana is a

2   minor offense as characterized by my colleague, it was given

3   the weight of what it should have been.

4        It's not like Mr. Larson is here with a three-point

5   criminal history bump because he possessed a small amount of

6   marijuana.  I think the fact is that he possessed a small

7   amount.  It's reflected by the sentence he served.  It's

8   reflected by one criminal history point that's been given;

9   therefore, I don't believe the criminal history is

10  over-represented.  I think it's accurately represented by the

11  one criminal history point.

12       *THE COURT:*  Thank you.

13       Mr. Larson, anything else on that point?

14       *THE DEFENDANT:*  No.

15       *THE COURT:*  The Court -- this is somewhat of a close

16  call because that particular conviction did take place when

17  Mr. Larson was 20 and it took place back in 2001.  Mr. Larson

18  is not arguing that the guidelines don't assess him a point.

19  In fact, he withdrew his objection to that.  And he did, as he

20  acknowledges, plead guilty to the offense.  He did receive, as

21  Mr. Golla acknowledged, a one-year probationary term.

22       The Court feels that although it's true there is a

23  trend towards decriminalization, especially for amounts that

24  small, and it may very well be true, in fact, probably is true

25  that in Denver that amount now amounts to a fine.  The fact of

1    the matter is back in 2001 it was a crime in Fairfax County and

2    he does get a point for it.  To pretend that it didn't happen

3    or that it wasn't a crime worthy of a point back then would be

4    to ignore the state of the law then which would be

5    inappropriate because all citizens at the time back in 2001,

6    including Mr. Larson, had to live pursuant to those particular

7    rules.

8         So the Court feels that the imposition of the one

9    point is appropriate in this case and then the one point for

10   his use of a computer for computer harassment also gets a

11   point.  So the two points I think do appropriately reflect his

12   criminal history and therefore the Court will deny the motion

13   for downward departure.

14        Mr. Larson, that means that we now turn to your motion

15   for a variant sentence, and that particular motion can overlap.

16   In other words, you can make the same arguments and they can be

17   considered by the Court not in determining what the proper

18   guideline is, but rather what the appropriate sentence is

19   because, as you know, the United States Sentencing Commission

20   guidelines are advisory now, which means that the Court doesn't

21   have to follow them at all.

22        And it also means that the Court is not bound to

23   consider only those particular factors which are made relevant

24   by the guidelines; rather, you can pretty much argue any type

25   of mitigating factor that you wish in terms of the Court

1    determining what the appropriate sentence should be.

2           I think because that is such a wide range in inquiry,

3    why don't we combine that with some of the objections that you

4    have made in your letters to the various forms of possible

5    sentences that have been recommended by the probation

6    department, restrictions on internet use, that type of thing.

7           Do you wish to argue in terms of the variant sentence

8    through Mr. Golla or --

9           THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  And because this issue will go to

11   the ultimate issue of where you should be sentenced, after

12   Mr. Golla argues, after Mr. Bohn responds to that, I will let

13   you then address the Court as well, and then we will address

14   the issue of what the appropriate sentence should be.

15          Mr. Golla?

16          MR. GOLLA:  Your Honor, with respect to the motion for

17   a variance, I would ask the Court to consider or incorporate

18   the arguments that I have already made regarding Mr. Larson's

19   criminal history with respect to the -- I guess it would be the

20   disparity in sentencing that would be meted out to individuals

21   with similar type of criminal backgrounds.  I won't say any

22   more on that except for the fact that I still feel, for

23   example, a conviction for possessing that small amount of

24   marijuana in some ways is much less serious than, you know,

25   some of these other probation sentences, for example, driving

1    under restraint, which we see a lot of in this courthouse, that

2    accounts for one point with individuals who have prior

3    alcohol-related offenses.

4          So in that respect I think that there is a comparison

5    to be made with someone's criminal history who gets bumped up

6    to Category II for possessing 1.3 or 1.4 grams of marijuana to

7    someone who has got a traffic offense that poses a danger or

8    risk to other individuals that are out on the roads.

9          The other thing I wanted to comment about is

10   Mr. Larson's mental health which was an issue earlier on in

11   this case, and there were reports done by Dr. Fukutaki and also

12   the Bureau of Prisons.  These types of cases and especially

13   this case I think really stem from mental health issues.  And I

14   am referring to the Presentence Report.  There is a mental

15   health report that stemmed from September 18, 2008 treatment in

16   I believe it was Virginia where there was a diagnosis of

17   delusional disorder severe and also depressive disorder.

18         I first met Mr. Larson right around the time that he

19   was arrested on this -- for this incident, and I will comment

20   to the Court that he was very depressed at that time.  You

21   know, he was hard to communicate with.  And I feel that at that

22   point in time, which was right around the time this incident

23   happened, that his mental health was in such a state that it

24   contributed to a certain extent to him sending this e-mail.

25         You know, I will comment on this.  In these cases the

1  agents went out to his house and said, "Are you sure you mean

2  this?"  And he said, "Yes."  And that's a two-way sword, but

3  for them to do that and go out and interview Mr. Larson and for

4  him to say that I think reflects on his mental state at that

5  time.  And I think that he was depressed and there were some

6  issues that were going on at that time.

7         For that reason -- and I am not really asking for a

8  substantial variance because he already has nine months and 21

9  days served toward his sentence.  And even if the Court imposed

10  a sentence of 12 months and a day, which is the recommendation

11  of probation, with good time it comes out to be 10 months and

12  six days.  So really he only has, even if it's 12 months and a

13  day or credit there is for time served, there is only a

14  difference of approximately 15 or 16 days that would be between

15  credit for time served and a 12-month and a day sentence.  So I

16  am leaving that to the Court's discretion, the Court's

17  authority, obviously, to consider whether a variance is --

18  should be imposed.

19         I would also point out that his mother has been

20  interviewed and there were issues growing up with his mental

21  health.  Depression has run in his family.  I believe that

22  there is comments about other family members who have had bouts

23  with depression.  I believe his father also has those issues

24  also.  So it's a condition that I think runs in his family, and

25  I am asking the Court to consider that in a credit for time

1    served sentence.

2         I will say this.  With his objections that he filed, I

3    am not too familiar with those objections that he filed

4    regarding the different types of sentence that he was

5    requesting, so I don't know.  If I can look at that, I can

6    respond to that, but right now I haven't really studied that,

7    his personal objection to the Presentence Report.

8         THE COURT:  What I will do, Mr. Golla, is I will ask

9    Mr. Larson about those.  And to the extent that he needs your

10   advice on them, we will take enough time necessary for you to

11   look over those and advise him on that.

12        MR. GOLLA:  Okay.

13        THE COURT:  Mr. Golla, let me ask you this and this

14   will be relevant.  I am going to ask Mr. Larson about the same.

15   Take a look at Mr. Larson's letter which is undated, but it was

16   one that at least the Court's original is on legal size paper.

17   The postmark is July 27, 2009, and it was received by the

18   probation department -- I am looking at the envelope right

19   now -- on July 29 of this year.  And it begins "Dear Mr.

20   Hanson, it seems to me that the special conditions of release."

21        MR. GOLLA:  I have that.

22        THE COURT:  I think the part that is most concerning

23   to the Court is that found on what would be the fourth page,

24   and Mr. Larson has marked it Page 4.  In the middle of the

25   page -- actually, beginning at the top of that page where he

1    says, quote, "However, citizens retain the right to use

2    reasonable and retaliatory force in the defense of their lives,

3    liberty and property against a tyrannical government.  The

4    government's use of armed force in the commission of extortion

5    and so on merits an armed response.  The assassination of

6    government officials would reflect the seriousness of their

7    offenses, promote respect for moral laws, provide just

8    punishment for their offenses, afford adequate deterrence to

9    criminal conduct, and protect the public from further crimes of

10   plaintiffs' officials.  To hinder someone from killing them is

11   to obstruct justice."

12          And then the paragraph immediately following, he

13   states, "Fortunately for them I went easy on them by only

14   threatening rather than doing anything, but this time in prison

15   has not been wasted.  I know how to go about things next time."

16          In light of that, why would the Court consider a

17   variant sentence?

18          MR. GOLLA:  Your Honor, the only response I can say to

19   that is I -- it was written in July and I have talked to

20   Mr. Larson since that time.  And I am absolutely sure that he

21   at this point in time realizes that, No. 1, he shouldn't have

22   written that; and No. 2, he didn't mean what he wrote.  And as

23   to why he wrote that, I wouldn't be able to answer that.  And

24   maybe he could answer that, but I think that he has come to a

25   point now where he realizes he has done some foolish things in

1   this case and that includes writing letters throughout the

2   course of the case that he shouldn't have written.

3         And I would say that Mr. Larson, and this is my

4   impression of him, sometimes wants to appear to be the smartest

5   person in the room. He is a bright individual, but I think

6   that when he writes these things and says these things, he

7   doesn't mean them. And I just -- that's my opinion of that. I

8   don't think he meant anything by that, and I am sure he will

9   get up in front of the Court and say the same thing. So I

10   haven't reviewed that part of the letter with him, but I am

11   just telling the Court that's what I feel based upon my recent

12   experiences with him and his remorse for this and realizing

13   that it was just a stupid thing to do, a reckless thing to do,

14   and him also now realizing that in a lot of ways he is immature

15   and these things are taken seriously, although he doesn't mean

16   these things when he writes them. But having said that, that's

17   the best way I can summarize.

18         *THE COURT:* Thank you, Mr. Golla.

19         Mr. Bohn?

20         *MR. BOHN:* Your Honor, to the extent Mr. Larson is

21   going to respond about the motion for variance, I would like to

22   respond after his portion of his response, if that's all right.

23   It seems I should be given that opportunity to know what his

24   argument is and then be able to respond to that. I know he has

25   a right to allocution, but to the extent he is going to respond

1    to the variance, I would like to respond after his.

2         THE COURT:  I think that that's -- well, why don't we

3    do this.  Why don't you go ahead.  I will give you a chance to

4    rebut anything Mr. Larson says after if you need to.

5         MR. BOHN:  Thank you.

6         Your Honor, this plea agreement was entered into and

7    the change of plea occurred back in May of this year.  The

8    United States agreed in the plea agreement to recommend a

9    sentence at the bottom of the guideline which was 12 months.  A

10   variant sentence is not appropriate for several reasons.  One

11   is primarily the underlying conduct that Mr. Larson committed

12   in this offense.  To threaten the president of the United

13   States no matter who is the president of the United States is a

14   wrong and has to be dealt with on the face of the merits of

15   that own issue.

16        The time and resources spent in dealing with this,

17   whether Mr. Larson intends to say "I didn't really mean it now"

18   or not still immobilizes numerous assets of the government and

19   is simply conduct that cannot be tolerated.  What is concerning

20   and came to light in the course of the PSIR and I addressed in

21   the response in Docket No. 41, Your Honor, appears on Page 7,

22   and I won't repeat to me what was a disturbing e-mail he wrote

23   a young lady previously which we were not aware of at the time.

24   It is an e-mail describing the rape of a woman that is written

25   in really disturbing gross detail, something that he then says

1    when he is caught, I didn't mean it.  I didn't mean to scare

2    her.  I didn't mean to have the ramifications of those actions.

3            This is not the first time Mr. Larson has turned to

4    the internet to scare someone or threaten someone.  This is a

5    second behavior where he has used communication to scare and

6    intimidate and harass people because he disagrees with their

7    position.

8            In the previous situation it was a situation involving

9    George Mason University student politics and now it's the

10   president of the United States because he disagrees with it.

11   And this letter written here -- I will give Mr. Golla credit.

12   I thought initially Mr. Larson's writings had tempered down

13   over a while.  He has written the United States numerous times

14   and I thought Mr. Larson had begun to see that you know what, I

15   cannot behave that way.

16           But the letter he wrote Mr. Hanson pointed out by the

17   Court really makes one concerned that he does not realize that

18   it's inappropriate to threaten people.  What it does is it

19   makes you concerned that now he is not going to threaten

20   anybody.  He is just going to act.  And that's a legitimate

21   concern.

22           While the United States feels bound by its

23   recommendation -- well, the plea agreement, not just the

24   recommendation, but the plea agreement to recommend the bottom

25   of the guideline of 12 months, clearly, Your Honor, a sentence

1    below that, a variant sentence below is inappropriate.  And to

2    the extent that Mr. Larson has comments, Your Honor, we do

3    appreciate that opportunity to comment on those.

4         *THE COURT:*  Mr. Larson, do you have any additional

5    comments about the motion for a variant sentence or at this

6    time if you want to make any further comment on some of the

7    sentencing aspects that you complained about, internet use,

8    that type of thing, now would be the time.  It doesn't mean you

9    waive them by not arguing them, but I did want to give you the

10   opportunity to state anything to the Court that you think might

11   be appropriate.

12        *THE DEFENDANT:*  I would just like to withdraw my

13   objections to the conditions of probation or supervised

14   release.

15        *THE COURT:*  Okay.  Anything else that you would like

16   to say on the motion for a variant sentence?  And just to let

17   you know, once we are done with that particular issue, then I

18   will give you the opportunity to address the Court, obviously,

19   in terms of what the sentence should be.

20        *THE DEFENDANT:*  All right.  Nothing further.

21        *THE COURT:*  All right.  The Court then will make the

22   following ruling on Mr. Larson's motion for a variant sentence:

23        Mr. Golla incorporated the argument that he made in

24   terms of the marijuana conviction, which, as I stated and I

25   would note now, it is a good point given the fact of

1    decriminalization.  However, I still think that the one point

2    is appropriate even though that was for a minor offense and

3    even though that was back in 2001.  There is no argument that

4    he should receive the one point for the other conviction that

5    he received.

6         Mr. Golla also brings up Mr. Larson's mental health

7    history.  The mental health history cuts both ways.  On one

8    hand it can be thought of as a mitigator because it may lessen

9    to some extent Mr. Larson's culpability for his actions because

10   he is suffering from some illnesses which have undoubtedly

11   influenced his behavior.  On the other hand, one can think of

12   it as an aggravator because it may make him more likely to

13   commit the same crime in the future or similar crimes in the

14   future.

15        So the Court for purposes of considering the motion

16   for variant sentence will not regard it as a mitigator or won't

17   consider it as an aggravator either, but the Court feels that

18   under the circumstances and especially given the letter

19   Mr. Larson wrote which raises some serious concerns about

20   whether or not he really is either remorseful or whether he

21   won't be able to refrain from making threats to people in the

22   future, the Court believes that there is no good ground to

23   grant a variant sentence in this case.  Therefore, the motion

24   for a variant sentence is denied.

25        What that means is that the applicable guideline range

that we will consider now for imposing sentence will be the guideline range that is noted in the Presentence Investigation Report, namely the advisory guideline range is between 12 months and 18 months; and the fine range is between $3,000 and $30,000; and the supervised release range of between two and three years.  So at this point in time we will take up argument regarding what the appropriate sentence should be.

Mr. Larson, would you like Mr. Golla -- I am going to give you the right to address the Court, as I mentioned to you before, but if you wish, you may have Mr. Golla make arguments on your behalf on this issue as well.

Would you like to have Mr. Golla address the Court on the issue of the appropriate sentence?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Golla, anything additional?

MR. GOLLA:  Your Honor, I don't have much additional. I think the only references that I have made previous to now are applicable to a bottom of the guideline range sentence.  I would ask the Court to consider and impose the sentence that was recommended by the probation department which is 12 months and a day.

This is a technical argument here, but I think the government does agree to the bottom of the guidelines that a 12-month and a day is probably the bottom of the guideline

1  range because if it's a 12-month sentence, Mr. Larson would do

2  the entire 12 months.  If it's 12 months and a day, assuming he

3  gets good time, which I think he will, he would do

4  approximately 10 months and six days.

5       So I have nothing to add besides that I would ask the

6  Court to consider the arguments that I have made, but I also

7  think that, you know, I am aware of the government's arguments

8  about the concerns for Mister -- the Court saying it's a

9  two-way sword and this could be an aggravating factor, the

10  letters that he has written.

11       I will say this, though.  I think his Presentence

12  Report, and Mr. Bohn is right, he gets on the internet, sends

13  letters out.  The letters tend to have these things that he

14  shouldn't say in them, but his history does not have any

15  evidence of him ever even carrying out any of these things.  So

16  I would ask the Court to consider that and sentence him for

17  what he has done rather than something he may do, which I am

18  telling the Court he is not going to do.

19       And I hope Mr. Larson, and we talked about this

20  lately, I think he has learned a big lesson from this.  And I

21  know he regrets writing the letters he has written before, but

22  I will let him address the Court at this point.

23       *THE COURT:*  Thank you, Mr. Golla.

24       Mr. Bohn?

25       *MR. BOHN:*  Your Honor, I feel bound by the terms of

1   the plea agreement even in light of the additional

2   correspondence.  We agree to recommend a sentence at the bottom

3   of the guideline.  That sentence is 12 months.  We stand by

4   that recommendation.

5         *THE COURT:*  Thank you, Mr. Bohn.

6         Mr. Larson?  Mr. Larson, this is your chance to

7   address the Court regarding what the appropriate sentence

8   should be.  As I said before, that guideline range of between

9   12 and 18 months is merely advisory, so you can argue for

10   whatever sentence you believe to be an appropriate one for you

11   in light of your conviction.

12         *THE DEFENDANT:*  Is this allocution right now?

13         *THE COURT:*  Yeah, it is.  This is allocution.

14         *THE DEFENDANT:*  Oh, okay.  All right.  I would just

15   like to say that I intend to abide by the terms of supervised

16   release and not commit more crimes.

17         *THE COURT:*  Mr. Larson, let's talk about the letter

18   that you wrote.  It seems to me that writing a letter like you

19   did, the one that's postmarked July 27, would probably be the

20   worst possible thing a person in your position could do because

21   it seems to me that it completely undermines all of the good

22   things that your family has written to me about you.  How do

23   you explain it?

24         *THE DEFENDANT:*  Well, partly I was just venting

25   frustrations, but also throughout the whole case I have been

1    expounding on my philosophy, but some of it -- it's not meant

2    so much as a letter to express what I am planning on doing in

3    the imminent future.  It's more to discuss the theoretical and

4    philosophical underpinnings of what I intended originally to

5    use the whole case to draw attention to which is when it is

6    ethical to use force.

7              THE COURT:  Well, then how do you explain your earlier

8    letter, and this is the one that's postmarked July 15, 2009 and

9    is addressed to Mr. Hanson from the probation department?  Do

10   you have a copy of that one?

11             MR. GOLLA:  What letter is that, Your Honor?

12             THE COURT:  This is one that was the first letter,

13   Mr. Larson, that was attached to the addendum.  It's undated,

14   but it's -- the envelope is postmarked July 15.

15             THE DEFENDANT:  It looks like both of these letters

16   were dated.

17             THE COURT:  This is the one that begins "Dear

18   Mr. Hanson, I have been troubled for the past few days."  Do

19   you have that one?

20             THE DEFENDANT:  What would you like me to --

21             THE COURT:  My question is this.  I just want to make

22   sure you have it in front of you.  Do you have it it in front

23   of you?

24             THE DEFENDANT:  Yes.

25             THE COURT:  So the very last paragraph you go about

1  disparaging Mr. Hanson.  That doesn't sound like anything

2  that's especially based upon any of your political beliefs.

3          THE DEFENDANT:  Well, yeah, it probably would have

4  been better if I hadn't said that.

5          THE COURT:  But, I mean, this is the problem.  I mean,

6  it probably would have been better if you hadn't sent an e-mail

7  threatening to kill the president of the United States because

8  that ended up in your getting arrested and now you are being

9  sentenced here today.  So what comfort can you give me that

10  somehow even though you know it's probably not a good idea to

11  do these things, you still go about doing them?

12          THE DEFENDANT:  Well, I mean, it's not a crime to

13  disparage someone, you know.

14          THE COURT:  Yeah, but you know it's wrong, maybe not

15  illegal, but you know violating the terms of not following a

16  probation officer's directive is something that can result in a

17  violation.  So it may not be legal in the sense it violates a

18  statute, but it's probably illegal in the terms it violates the

19  terms and conditions of probation if you didn't follow a

20  probation officer's directive.  So that causes me concern that

21  you are just kind of -- you see -- you obviously are

22  threatening to throw a rock through the window of society.

23          THE DEFENDANT:  What?  What do you mean by that?

24          THE COURT:  Well, what I mean by that is for some

25  reason you like to, you know, make threats against persons in

1  authority.

2        THE DEFENDANT:  Well, eventually I realized that it's

3  not an effective way of accomplishing anything productive.  I

4  mean, I didn't really finish analyzing it until kind of

5  recently like since the time that I wrote that.

6        THE COURT:  What conclusion have you come to now

7  through your analysis?

8        THE DEFENDANT:  Well, just that getting people all

9  riled up and upsetting them and insulting them and stuff, it's

10  not very persuasive and it doesn't accomplish anything

11  productive.  I mean, it draws attention, but it doesn't advance

12  causes or anything.  So I just decided not to follow that path

13  anymore.  I haven't had probation violations in the past, so I

14  think I have a good record as far as that's concerned.

15        THE COURT:  That's true.  Mr. Larson, anything else

16  that you would wish to tell me in regard to what the

17  appropriate sentence should be?

18        THE DEFENDANT:  That's about it.  I mean, did you

19  happen to see the essay that I wrote about publicity stunts?

20  It was a typewritten one.

21        THE COURT:  Mr. Hanson, do you know where that --

22        PROBATION OFFICER:  I don't recall receiving that or

23  reading that.

24        THE COURT:  Mr. Bohn?

25        MR. BOHN:  It might have been one I got during the

1    course of the case, Your Honor.

2    THE COURT:  Why don't we -- we will take just a moment

3    and Mr. Bohn will look for that.  I don't think it was attached

4    to any of the materials; and as a result, Mr. Larson, I have

5    not considered that, but why don't we see if we have a copy of

6    it and then we can decide what to do.

7    THE DEFENDANT:  It's typed.

8    MR. BOHN:  Is this it?

9    THE DEFENDANT:  No.

10   THE COURT:  Do you have a copy of it, Mr. Larson,

11   somewhere, not necessarily here?

12   THE DEFENDANT:  Yes.

13   THE COURT:  Is it something that you wish for me to

14   consider in imposing sentence?  If so, and assuming that

15   Mr. Bohn can't find it, at your request I will continue this

16   hearing and we will do the sentencing on another day so that I

17   can take that under consideration.

18   THE DEFENDANT:  It might be the last one I sent you.

19   MR. BOHN:  Mr. Larson is an extensive writer.

20   THE DEFENDANT:  I think it was probably September or

21   it might be August.  It summed up some of the things that I

22   thought I learned from it.

23   THE COURT:  Well, Mr. Larson, would you like, since

24   neither side seems to be able to locate it and because I am

25   unfamiliar with it and Mr. Hanson doesn't believe the probation

1   department has received it, would you like to postpone the

2   sentencing?  It won't prejudice you in any way, but it would

3   allow you the opportunity to submit that through Mr. Golla to

4   the probation department and then that way it will be -- a copy

5   will be given to me.  A copy will be given to Mr. Bohn assuming

6   he doesn't already have it, and I will then have a chance to

7   read through it and consider it before imposing sentence.

8           *THE DEFENDANT:*  That could be good, yeah.

9           *THE COURT:*  Go ahead.

10           *THE DEFENDANT:*  When might that be?

11           *THE COURT:*  Well, I will have to take a look at my

12   calendar, but I think given the fact that we have all heard the

13   different statements by either side, we would probably try to

14   reschedule this for next week.

15           How long would you like to have the matter continued

16   for?

17           *THE DEFENDANT:*  I guess a week is fine.

18           *THE COURT:*  We could reschedule this matter for next

19   Tuesday, assuming that the attorneys are available.

20           *MR. GOLLA:*  What time, Your Honor?

21           *THE COURT:*  I have a change of plea at 9:00 a.m.

22   Other than that, I am open.  Mr. Bohn, are you available on

23   Tuesday?

24           *MR. BOHN:*  I can do 10:00 o'clock, Your Honor.

25           *THE COURT:*  Does that work for you, Mr. Golla?

1           *MR. GOLLA:*  10:00 o'clock is fine with me.

2           *THE COURT:*  Mr. Larson, is that acceptable to you?

3           *THE DEFENDANT:*  That should be fine.  So what will

4     happen at that hearing?  How will it work?

5           *THE COURT:*  Well, here is how it will work.  Mr.

6     Golla, will that give you enough time to be able to get --

7           *MR. GOLLA:*  Your Honor, I would ask maybe later in the

8     week, like maybe next Friday, Thursday or Friday next week I

9     think would be best because I have to get the letter and then

10    review it and --

11          *THE COURT:*  I think that makes sense.  How about

12    3:00 o'clock next Friday?

13          *MR. GOLLA:*  That's fine with me.

14          *MR. BOHN:*  We will make it work, Your Honor.

15          *THE COURT:*  If there is a better time, Mr. Bohn --

16          *MR. BOHN:*  There is not.  I just have a response to

17    suppression due, so I know I will be working anyway.  So let's

18    just do it at 3:00 and get it done.

19          *THE COURT:*  Is that okay with you, Mr. Larson?

20          *THE DEFENDANT:*  Yes.  Will I have an opportunity to

21    address the Court again?

22          *THE COURT:*  You will.  So what we will do is Mr. Golla

23    between now and then will attempt to get a copy of this

24    document and any other thing you want me to review.  If you

25    will then submit that to Mr. Hanson who will then distribute it

1    to me and also Mr. Bohn.  Then when we reconvene next Friday at

2    3:00, we will pick right up with where we are now.  In other

3    words, I will have read whatever you choose to submit at that

4    time and then you can continue with your allocution.

5               THE DEFENDANT:  Okay.

6               THE COURT:  All right.  That's what we will do.  This

7    matter will be continued for sentencing until October 9 at

8    3:00 p.m. and until that time Mr. Larson will be remanded to

9    the custody of the United States Marshals.  The Court will be

10   in recess.

11        (Recess at 2:34 p.m.)

12                    REPORTER'S CERTIFICATE

13        I certify that the foregoing is a correct transcript from

14   the record of proceedings in the above-entitled matter.  Dated

15   at Denver, Colorado, this 4th day of November, 2009.

16

17                         S/Janet M. Coppock

18

19

20

21

22

23

24

25