IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 08-CR-00523-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NATHAN DANIEL LARSON,

    Defendant.
_____

REPORTER'S TRANSCRIPT
Sentencing (Volume 2)
_____

Proceedings before the HONORABLE PHILIP A. BRIMMER, Judge, United States District Court for the District of Colorado, commencing at 3:30 p.m. on the 9th day of October, 2009, in Courtroom A701, United States Courthouse, Denver, Colorado.

APPEARANCES

Kurt J. Bohn, Assistant United States Attorney, 1225 17th Street, Suite 700, Denver, CO 80202, appeared for the plaintiff.

The defendant appeared pro se.

Matthew C. Golla, Office of the Federal Public Defender, 633 17th Street, Suite 1000, Denver, CO 80202, appeared as advisory counsel to the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Janet M. Coppock, 901 19th Street, Room A257, Denver, Colorado, 80294, (303) 893-2835

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | *THE COURT:* The matter before the Court is United |
| 3 | States of America v. Nathan Daniel Larson. It is Criminal Case |
| 4 | No. 08-CR-523. Mr. Bohn appears on behalf of the United |
| 5 | States. Good afternoon. |
| 6 | *MR. BOHN:* Good afternoon, Your Honor. |
| 7 | *THE COURT:* Mr. Golla appears as advisory counsel for |
| 8 | Mr. Larson. Good afternoon. |
| 9 | *MR. GOLLA:* Good afternoon, Your Honor. Sorry I was a |
| 10 | little late there. I was in Judge Shaffer's courtroom. |
| 11 | *THE COURT:* Understood. No problem. Mr. Larson |
| 12 | represents himself in this matter. He is in custody. Good |
| 13 | afternoon to you. |
| 14 | *THE DEFENDANT:* Good afternoon. |
| 15 | *THE COURT:* We are here today for the continued |
| 16 | sentencing hearing. Where we left off last time was that |
| 17 | Mr. Larson was in the middle of allocution and mentioned or |
| 18 | actually asked whether the Court had seen a copy of a document |
| 19 | that he had written concerning publicity stunts. I was |
| 20 | unfamiliar with that document and no one in the courtroom could |
| 21 | find a copy of it, so Mr. Larson asked at my request to adjourn |
| 22 | the proceeding until today so that I could have a chance to |
| 23 | review that document. It has been provided to the Court |
| 24 | through the fourth addendum. |
| 25 | And Mr. Larson, I have had an opportunity to review |

that two-page typed document entitled "On the Ineffectiveness of Publicity Stunts." That being said, why don't you go to the podium, if you would, and then we will continue with your allocution.

*THE DEFENDANT:* I have nothing further to say.

*THE COURT:* And Mr. Larson, do you -- I am sure you do, but just so you make -- so the record is clear, I identified what the advisory guideline range was and what the supervised release range was and fine range. You understand that those are just advisory and you can ask for any sentence that you believe is appropriate in this case, right?

*THE DEFENDANT:* Right.

*THE COURT:* Okay. What sentence do you believe -- and you don't have to say anything, but do you want to recommend a particular sentence that you think would be fair and appropriate in this case?

*THE DEFENDANT:* Time served.

*THE COURT:* Okay. Anything else in terms of what you believe the sentence should be?

*THE DEFENDANT:* No.

*THE COURT:* Okay. Mr. Golla, anything else in light of the document submitted in the fourth addendum or for that matter anything else regarding sentencing on behalf of Mr. Larson, assuming Mr. Larson, you don't have an objection to Mr. Golla providing such information. No objection?

1         *THE DEFENDANT:* No.

2         *MR. GOLLA:* Your Honor, I think I said everything I
3 needed to say at the last hearing. I would just point out from
4 reviewing the letter that Mr. Larson does seem to have a point
5 that this letter does reflect that he has gone through some
6 self-reflection while he has been sitting out there at the FDC
7 and realizes that this was something that he never should have
8 done and it really achieves no purpose whatsoever. And it does
9 cause harm or trouble to certain people, but I would say that
10 this letter tends to support his -- well, I would just say this
11 letter tends to support a position that hopefully the Court
12 would not have as much concern that it did have last week
13 concerning some of the comments that Mr. Larson had in previous
14 materials that are sent to the Court.

15         *THE COURT:* Thank you, Mr. Golla. Mr. Bohn, anything
16 else on behalf of the United States?

17         *MR. BOHN:* Your Honor, we stand by our previous
18 recommendation, but the only thing I would ask the Court to at
19 least factor in is that the comments that concern the Court
20 last time actually occurred after the writing of this letter.
21 The comments to the probation officer, the letter to the
22 probation officer, those occurred after this letter. It wasn't
23 like this is the final definitive position of Mr. Larson.
24 Although I think he might have come a long way in realizing the
25 error of his way, I think there still might be cause for the

1 Court to be concerned.

2 *THE COURT:* Thank you. The Court will impose
3 sentence --

4 *MR. GOLLA:* Your Honor, just one thing. I am not
5 trying to bicker here. This letter was written September 4th.
6 I don't know when the other material was written, but --

7 *THE COURT:* Well, actually, I am not 100 percent sure.
8 I think that the letters that I talked about last time --

9 *MR. GOLLA:* I thought those were in July.

10 *THE COURT:* Actually, no. Hold on. We can ascertain
11 the date that they were written at least roughly through the
12 postmark date contained on the envelope that they were sent in.

13 The first letter that I referenced, because it
14 contains disparaging comments about the probation officer,
15 Mr. Hanson, were contained in a letter that was received at the
16 probation office on July 16 of this year, which was postmarked
17 on July 15. And the other letter that I referenced -- once
18 again, these letters are attached to a copy of the Presentence
19 Investigation Report -- this is the letter that contains the
20 statement that talked about "fortunately for them I went easy
21 on them by only threatening rather than doing anything." That
22 is contained in a letter that was received by the probation
23 department on July 29th, 2009 in a letter postmarked July 27,
24 2009. So Mr. Golla, you are right.

25 *MR. BOHN:* Your Honor, correct me if I'm wrong, but I

1  am looking at a letter dated September 13 to Mr. Hanson also.

2          THE COURT:  Is that -- I don't think I have the
3  original, but I might.  Let me take a look.

4          MR. BOHN:  Again, I would concede Mr. Golla's point
5  that this was not the most threatening of the letters, but it
6  definitely does not follow the exact same abandonment tone that
7  the letter of September 4th does.

8          THE COURT:  What addendum is that letter contained in,
9  Mr. Bohn?

10         MR. BOHN:  Well, Your Honor, the confusing part to me
11 is it appears to be contained in the addendum August 11, 2009,
12 but it's dated September 13, 2009, so one might need to define
13 how that happened, but that's how mine came to me.

14         MR. GOLLA:  Your Honor, the addendum that I have, the
15 August 11 addendum does have the attachment of that letter by
16 July 16, but I am not going to bicker over this.

17         MR. BOHN:  I would be happy to provide it to the Court
18 if you would like to see it.

19         THE COURT:  Actually, I don't find that one, so
20 perhaps if you could hand it to Ms. Preuitt-Parks and see what
21 you are talking about.

22         MR. BOHN:  It's on the back, if I could just direct
23 the Court to Page 4.  It's where he says, "This time in prison
24 has not been wasted.  I know how to go about things next time."

25         THE COURT:  Mr. Hanson, perhaps you can help us out.

1  I have, and Mr. Bohn may not, but I have an envelope that is
2  attached to the back of that particular letter and that's the
3  one that is postmarked July 29.  Do you recall, would that
4  indicate the date that the probation officer received it?
5      *PROBATION OFFICER:*  It is, Your Honor.  And I can't
6  help a whole lot because I don't have copies of those
7  envelopes, but I did attach them just for this reason because
8  there was so many letters coming in and some of the letters
9  weren't dated.
10     *THE COURT:*  It's hard to say, but I am going to give
11 Mr. Larson the benefit of the doubt in terms of the date of the
12 letter.  And Mr. Bohn, I will have that for you at the
13 conclusion of this hearing so you can get that back.
14     Anything else, Mr. Golla?
15     *MR. GOLLA:*  No, Your Honor.
16     *THE COURT:*  Mr. Larson?
17     *THE DEFENDANT:*  No.
18     *THE COURT:*  Pursuant to the U.S. Supreme Court case
19 ruling in Booker and also in FanFan, United States Sentencing
20 Commission guidelines have become advisory.  The Court, while
21 not bound to apply the guidelines, has consulted the advisory
22 guidelines and taken them into account with the sentencing
23 factors identified in 18 U.S.C. 3553(a).
24     The Court finds that the conviction in Paragraph 25 of
25 the Presentence Report is a countable conviction.  The Court

1  determines that no finding is necessary concerning the
2  remaining objections to the Presentence Report because the
3  controverted matters will not be taken into account in imposing
4  sentence or will not affect the sentence.  Neither the
5  government nor the defendant has challenged any other aspect of
6  the Presentence Report; therefore, the remaining factual
7  statements and guideline applications are adopted without
8  objection as the Court's findings of fact concerning
9  sentencing.
10         The Court finds that the total offense level was 12
11  and the defendant's criminal history category is two, which
12  results in an imprisonment range of 12 to 18 months and a fine
13  range of $3,000 to $30,000.  The supervised release range is
14  two to three years.  The Court finds no reason to depart from
15  the guideline range which does not exceed 24 months and will
16  impose a sentence within that range.
17         The Court has taken into account the following in
18  determining what the appropriate sentence for Mr. Larson is:
19  The threat in this particular case was, as Mr. Larson and
20  Mr. Golla say, one which did not necessarily have lots of
21  aspects of believability to it.  That's why the FBI agents when
22  they came out to interview Mr. Larson repeatedly asked him
23  whether he was just joking when he made the threat against the
24  president of the United States.  Mr. Larson, despite those
25  opportunities to indicate that he wasn't serious, chose to

1  indicate that, in fact, he was serious.

2  Mr. Larson has since indicated that he was simply
3  making a statement, a political statement, and that part of
4  that statement was a publicity stunt designed to gain attention
5  to both himself and to his cause and therefore disseminate his
6  particular political view. He indicates that he has since
7  decided that that type of publicity stunt is an ineffective and
8  improper way to go about expressing his political views.

9  That then brings up a question that the Court asked of
10 Mr. Golla and also Mr. Larson, and that is if, in fact, he has
11 decided that that particular means of expression is not
12 appropriate. And given this particular crime and the
13 possibility of him committing something similar in the future,
14 in other words, recidivating, what comfort he could give the
15 Court.

16 One of the things I called to Mr. Larson's attention
17 in the course of that were the letters that he wrote addressed
18 to Mr. Hanson, one of which is in the envelope that I believe
19 is associated with that letter that's postmarked July 15, 2009
20 in which Mr. Larson decided to use the opportunity in writing
21 this letter to Mr. Hanson to disparage him. Of course,
22 Mr. Hanson is someone who is merely executing his job duties.

23 Admittedly, this is something that is a very personal
24 process to Mr. Larson given the fact that a presentence
25 investigation report is the equivalent of this is your life and

solicits views from all sorts of different people on the person who is being investigated and for that reason may trigger some emotions. However, Mr. Larson's decision to make personal attacks upon the probation officer demonstrates that Mr. Larson has problems with self-control and those are the same problems that are reflected in his threat against the president.

Mr. Larson also wrote another letter to Mr. Hanson. This is the one that the Court previously referenced and I believe is associated with an envelope that is postmarked July 27 of 2009. That letter which is quite long, handwritten, contains a part which I believe it's appropriate to read into the record at this time. And it says on Page 4, "However, citizens retain the right to use reasonable retaliatory force in defense of their lives, liberty and property against a tyrannical government. The government's use of armed force in the commission of extortion and so on merits an armed response. The assassination of government officials would reflect the seriousness of their offenses, promote respect for moral laws, provide just punishment for their offenses, afford adequate deterrence to criminal conduct and protect the public from further crimes of the plaintiffs' officials. To hinder someone from killing them is to obstruct justice. Fortunately for them I went easy on them by only threatening rather than doing anything, but this time in prison has not been wasted. I know how to go about things next time."

            Mr. Golla in response to that, to my reading those
particular words in Mr. Larson's letter, suggested that
Mr. Larson has spent time reflecting on them, realizes that
they were an inappropriate response.  Mr. Larson, when I asked
him about them, was less direct, not really apologetic, did
reference the paper that he wrote concerning publicity stunts
which could be -- which could imply that he has considered --
reconsidered the utility of doing something like sending a
threatening e-mail to the president United States.

            The problem with that argument, however, is that these
are letters to Mr. Hanson as part of a Presentence
Investigation Report which is not public at all.  So the
letters that Mr. Larson chose to write after he was sitting in
custody after being charged with this crime and after he should
have been reflecting on what he did shows that he has
self-control problems and had made a very poor decision to
write these letters to Mr. Hanson in a non-public process and
essentially reiterate the same type of threat that he made
against the president.  That is something which causes the
Court a great deal of concern.

            The Court received two letters in connection with this
sentencing.  One of them is from Mr. Larson's mother whose name
is Dottie Larson, and she indicates and wanted to qualify some
of the things that had been mentioned in the course of the
presentence investigation and essentially indicates that she

1  does not believe that her son is prone to violence. She also
2  indicates that she believes that he has potential again to be
3  responsible and productive citizen.
4  I also received a letter from Mr. Larson's sister,
5  whose name is Becca Larson, and she provided what I thought was
6  an important point which is that she grew up with Mr. Larson
7  and that the two of them fought a lot, but that it never ended
8  in violence. "We fought with words only. We never fought with
9  fists. Nathan never hit me, not even once." I think that that
10  is a definite mitigating factor given the fact that she would
11  know him very well. She grew up with him and indicates that he
12  never once resorted to violence against her.
13  But when we look on the record after Mr. Larson was
14  older, after he turned -- well, when he was in high school and
15  then once he became an adult, there is some evidence in the
16  record that, in fact, Mr. Larson at least through his action
17  posed enough of a threat that his mother had concerns about
18  him. The probation report at Page 66 indicates that
19  Mr. Larson's mother indicated that he had hit her in the past
20  when he was a teenager. She later indicated that she had
21  concerns that he might try to get a gun.
22  So here is a person, his own mother, who would have a
23  great deal of familiarity with him, and she indicated on one
24  occasion he did hit her. On another occasion she had concerns
25  he might act on some of these beliefs that he had and was

1  worried that he might try to get a gun.

2  Paragraph 70 of the Presentence Investigation Report
3  contains additional statements that his mother had provided,
4  and she indicated that at one point she had become very
5  concerned that her son would hurt himself or someone else.  So
6  the evidence in the record shows that even those close to him
7  have had concerns about him actually carrying out some of the
8  beliefs that he had.

9  And then, of course, on Page 76 of the Presentence
10 Investigation Report there is an incident when Mr. Larson was
11 in 11th grade where he sprayed a fellow student with urine and
12 then when a law enforcement officer attempted to apprehend him,
13 he pulled a knife on that officer.  So if we look at
14 Mr. Larson's past and then consider the past in light of the
15 letters, what we have is a situation where we have an
16 individual who does seem to have some mental health issues.

17 And he also had some strong political beliefs.  There
18 is nothing wrong with having strong political beliefs and
19 Mr. Larson is entitled to hold whatever beliefs he wishes, but
20 as this particular conviction aptly demonstrates, he doesn't
21 have the right to threaten the president of the United States
22 by sending an e-mail and he is also capable of acting out.  And
23 for that reason the Court finds that Mr. Larson does pose a
24 risk of doing something like this in the future.

25 The Court does not believe that Mr. Larson has

1  renounced acts like this and the letters that he sent to
2  Mr. Hanson demonstrate that fact.  Of course, the sentencing
3  range that we are looking at in this case is not particularly
4  long.  And Mr. Larson, as Mr. Golla pointed out last time, is
5  going to be out pretty soon regardless.  But nonetheless, the
6  Court feels that it is appropriate to impose a sentence while
7  not at the top of the guideline range, nonetheless, not at the
8  bottom of the guideline range because Mr. Larson needs to
9  understand that although given the fact that he is a very
10 intelligent person and may at times regard the rest of society
11 with a certain degree of contempt, that nonetheless, all
12 persons, regardless of whether they live in this society or
13 Papua, New Guinea or anywhere else in the world, have got to
14 conform to certain norms of behavior.
15         They have got to adapt their behavior to accommodate
16 the fact that other people live in the world.  And the fact
17 that someone may have a high IQ really doesn't affect that
18 because, of course, even if Mr. Larson has the highest IQ in
19 the courtroom, he is also the only person in the courtroom that
20 happens to be in custody.
21         So the sentence in this case needs to send a message
22 to Mr. Larson and that message is that when you know better,
23 and we have had medical experts who have determined that
24 Mr. Larson does and did know exactly what he was doing and know
25 that it was wrong, that when you purposely violate the law, you

need to be -- stand ready to be punished for it. And Mr. Larson in this case knew what the law was, decided to do it anyway.

I don't believe that he has changed his beliefs or at least there are occasions that Mr. Larson feels under compulsion to back down. And what Mr. Larson needs to realize, and I hope this sentence sends that message, is that he needs to control those impulses. And if he doesn't control those impulses, then there are going to be increasingly harsh consequences for not doing so.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant Nathan Daniel Larson is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 16 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another federal, state or local crime; shall not possess a firearm as defined in 18 U.S.C. 921; and shall comply with the standard conditions that have been adopted by this Court.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any

```
 1  unlawful use of a controlled substance.  The defendant shall
 2  submit to one drug test within 15 days of release on supervised
 3  release and two periodic tests thereafter.
 4          The defendant shall cooperate in the collection of DNA
 5  as directed by the probation officer.
 6          And in addition, the defendant shall comply with the
 7  following special conditions:  The defendant shall participate
 8  in a program of mental health treatment as approved by the
 9  probation officer until such time as the defendant is released
10  from the program by the probation officer.  The defendant shall
11  pay the cost of treatment as directed by the probation officer.
12  The Court authorizes the probation officer to release to the
13  treatment agency all psychological reports and/or a Presentence
14  Report for continuity of treatment.
15          No. 2, the defendant shall remain medication compliant
16  and shall take all medications that are prescribed by his
17  treating psychiatrist.  The defendant shall cooperate with
18  random blood tests as required by his treating psychiatrist
19  and/or supervising probation officer to ensure that a
20  therapeutic level of the prescribed medications is maintained.
21          The defendant shall not access an e-mail account
22  without prior permission from the supervising probation
23  officer.
24          The defendant shall pay a special assessment of $100
25  which is ordered due and payable immediately.  The Court finds
```

1  that the defendant does not have the ability to pay a fine and
2  will waive the fine in this case.
3      The defendant is advised of his right to appeal the
4  sentence in this case.  If the defendant desires to appeal, a
5  notice of appeal must be filed with the clerk of the court
6  within 10 days after entry of judgment or the right to appeal
7  will be lost.  If the defendant is unable to afford an attorney
8  for an appeal, the Court will appoint one to represent him.  If
9  the defendant so requests, the clerk of the court must
10 immediately prepare and file a notice of appeal on behalf of
11 the defendant.
12     Mr. Larson, obviously your record shows that when you
13 are in the right setting, you do real well, like when you were
14 in the Northern Virginia Community College and you got your
15 accounting certificate and also when you were at George Mason
16 University.  It seems to me that if you focus on your mental
17 health treatment, get some of the impulses under control and
18 then when you are released seek out some profession, probably
19 something other than accounting, and get into a good fit, you
20 are going to be fine and you will be successful.  You will be
21 happy.  Society will leave you alone, you know, as much as you
22 can expect.  You can go ahead and have any type of political
23 belief that you want.
24     But in this case you got into trouble, not because
25 society was out to oppress you, but because you reached out and

1    touched someone.  And what you have to do is somehow get
2    that -- the impulse to do that under control so that you don't
3    run afoul of the law anymore.  And in that regard I wish you
4    good luck.
5            Anything else on behalf of the United States,
6    Mr. Bohn?
7            *MR. BOHN:*  Not by the government, Your Honor.
8            *THE COURT:*  Anything else Mr. Golla?
9            *MR. GOLLA:*  No, Your Honor.
10           *THE COURT:*  Anything else, Mr. Larson?
11           *THE DEFENDANT:*  No.
12           *THE COURT:*  Thank you.  Mr. Larson is remanded to the
13   custody of the United States Marshals.  Thanks to Mr. Hanson
14   who is here from the probation department and also to the
15   marshals.  The Court will be in recess.
16       (Recess at 4:00 p.m.)
17                      REPORTER'S CERTIFICATE
18     I certify that the foregoing is a correct transcript from
19   the record of proceedings in the above-entitled matter.  Dated
20   at Denver, Colorado, this 4th day of November, 2009.
21
22                            S/Janet M. Coppock
23
24
25